IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**HENRY HARRIS**                                                                              **PLAINTIFF**

**v.**                                                            **CAUSE NO. 1:14-cv-00435-LG-JCG**

**JACKSON COUNTY, MISSISSIPPI;**
**JACKSON COUNTY BOARD OF SUPERVISORS,**
**Individually and collectively;**
**JACKSON COUNTY SHERIFF'S OFFICE;**
**JACKSON COUNTY NARCOTICS TASK FORCE;**
**SHERIFF MIKE BYRD, OFFICER KEN McCLENIC,**
**OTHER UNKNOWN JOHN and JANE DOES, A-Z,**
**Individually and in their official capacities**                       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT
BASED ON QUALIFIED IMMUNITY AND STATE
LAW INDIVIDUAL IMMUNITY, FILED BY DEFENDANTS
SHERIFF MIKE BYRD AND OFFICER KEN McCLENIC**

BEFORE THE COURT is the [14] Motion for Summary Judgment filed by

Defendants Mike Byrd, Sheriff of Jackson County, and Ken McClenic, an agent with

the Jackson County Narcotics Task Force.  They request judgment in their favor as

to certain claims against them in their individual capacities.  Harris requested an

extension of time within which to file a response, but that time elapsed without a

response.  The Court solicited additional briefing on Harris' claim of "criminal

conversion" and both parties responded.  After due consideration of the parties'

arguments, the moving defendants' evidence, and the relevant law, it is the Court's

opinion that Byrd and McClenic are entitled to judgment as a matter of law, in their

individual capacities, as to all claims.

BACKGROUND

Plaintiff Harris filed his lawsuit in the Circuit of Jackson County, Mississippi, against Jackson County, Mississippi ("Jackson County") Defendants, including Mike Byrd, in his official and individual capacity, and Ken McClenic, in his official and individual capacity.  In his Complaint, Plaintiff alleges that on July 10, 2013, the Jackson County Defendants violated his constitutional rights through use of excessive force, and asserts claims of conspiracy pursuant to 42 U.S.C. §§ 1985(3) and 1986, and state law claims of false arrest, false imprisonment, slander and libel, assault, battery, criminal conversion, common law conspiracy, and negligent and intentional infliction of emotional distress.  The Jackson County Defendants removed the action to this Court and Sheriff Byrd and Officer McClenic now move for dismissal on the grounds of qualified immunity, state law individual immunity, and the statute of limitations.

According to the County's records attached to the Motion, for a period of several months prior to the incident at issue here, McClenic, who was head of the Task Force at the time, received information from informants that Earnest Bradley, a convicted drug dealer, and others were running a "Gambling House" in a portion of a building owned by Harris located in Moss Point, Mississippi.  (*See* Def. Mot. Ex. A at 1 (Report of Investigation), ECF No. 14-1).  On July 10, 2013, McClenic received information from a confidential informant that he had played a game of poker at the establishment and also purchased poker chips from Harris.  McClenic was also advised by the informant that the informant had witnessed Bradley selling

drugs in the Gambling House.  Agents of the Task Force surveilled the property on the afternoon of July 10, and observed Ricky Ducksworth, also a known drug dealer, enter and exit the Gambling House several times and saw Ducksworth place a bag inside a fuse panel of a vehicle.  Based on this information, McClenic obtained a search warrant for the building located at 6813 Frederick Street.  (*Id.*; Ex. B (Search Warrant), ECF No. 14-2).

At 10:00 p.m. on the night of July 10, the search warrant was executed on the building by the Task Force, with assistance from the Emergency Services Unit Team ("ESU Team") and Criminal Investigation Division of the Sheriff's Department.  (*See* Def. Mot. Ex. A at 1-2, ECF No. 14-1).  A distraction device was used by the ESU Team to gain entry to the building through a rear door, at which point McClenic was preparing to enter the building through the front door.  (*Id.* at 2).  As McClenic was approaching the front door, he heard the deployment of the distraction device and the ESU Team identifying themselves to the subjects within the building, yelling "get on the ground," "gun" and "where is the gun."  McClenic saw several of the individual subjects run toward the front door of the building, refusing to comply with the instruction of law enforcement to get on the ground. Harris was one of these individuals.  He ran into the door and fell to the ground. McClenic struck him once, in a "green area" as defined by the County's Use of Force policy, to obtain compliance.  (Mot. Ex. C at 8 (Sheriff's Department SOP 5.01), ECF No. 14-3).  Immediately after his arrest, Harris complained of an injury to his elbow.  He alleges that as he fell, he "landed on his stomach and snapped his triceps

tendon." (Compl. 5 (¶12), ECF No. 1-2).  Harris was transported to the Singing River Hospital Emergency Room for treatment.  He alleges he was never charged with any crimes in connection with this incident.

THE LEGAL STANDARD

Summary judgment is mandated against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party has the burden of proof at trial.  Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Factual controversies are resolved in favor of the nonmoving party, but only when there is an actual controversy; that is, when both parties have submitted evidence of contradictory facts.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  The Plaintiff has not submitted any argument or evidence in opposition to the Defendants' Motion.  Nevertheless, the Defendants have the burden of establishing the absence of a genuine issue of material fact, and, unless they have done so, the Court may not grant the Motion, regardless of whether any response was filed.  *Hibernia Nat'l. Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985).

DISCUSSION

**1.    42 U.S.C. § 1983 and Qualified Immunity**

Harris describes this as a "federal civil rights action brought as a result of what the Plaintiff alleges was a blatant violation of, inter alia, the federal, civil, constitutional and human rights of the Plaintiff."  (Compl. 1 (¶1), ECF No. 1-2).  42

-4-

U.S.C. § 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights.  Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the laws of the United States.  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981).  A plaintiff cannot succeed on a § 1983 claim merely by showing any deprivation of his rights; § 1983 was intended to preserve rights protected by federal law.  *Wright v. Collins*, 766 F.2d 841, 849 (5th Cir. 1985).

In this summary judgment motion, the Defendants, in their individual capacities, assert that they are entitled to the defense of qualified immunity. "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002) (citing *Bazan ex rel. Bazan v. Hidalgo* Cty., 246 F.3d 481, 489 (5th Cir. 2001)).  This burden cannot be discharged by conclusory allegations and assertions. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).

Evaluating a claim of qualified immunity involves two inquiries: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that

right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), overruled in part by *Pearson*, 129 S. Ct. 808. "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (citations omitted). A defendant will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant's actions were lawful; but if officers of reasonable competence could disagree on the issue, immunity should be recognized. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). It is within the discretion of the district court to decide which of the two prongs of the qualified immunity analysis to address first in light of the circumstances of each case. *Pearson*, 129 S. Ct. at 818. Each defendant's actions must be evaluated individually in the qualified immunity context. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

A.  Sheriff Byrd

Harris makes no allegation that Sheriff Byrd was personally involved in any of the events surrounding Harris' arrest. A supervisory government official such as Byrd "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, "a plaintiff must plead that each Government-official defendant, through

the official's own individual actions, has violated the Constitution." *Id*. As Harris'

Complaint lacks any allegation that Byrd's individual actions violated the

Constitution, Byrd is entitled to qualified immunity from Harris' § 1983 claims.

### B.  Agent McClenic

Without referring to any specific Constitutional provision, Harris alleges that

McClenic's actions deprived him of "substantive and/or procedural due process of

law, detaining him, physically assaulting him, and defaming his character without

trial. . . ." (Compl. 6 (¶13), ECF No. 1-2).  The Court interprets the scant

allegations in the Complaint as asserting causes of action under § 1983 for wrongful

arrest and excessive force.

A claim of wrongful arrest "implicate[s] the fourth and fourteenth

amendments when the individual complaints of an arrest, detention and

prosecution without probable cause." *Sanders v. English*, 950 F.2d 1152, 1159 (5th

Cir. 1992) (citations omitted).  However, "a plaintiff seeking recovery from a police

officer for one of these constitutional torts must tender evidence establishing

misconduct that exceeds mere negligence."  *Id*.  There is no evidence provided that

would allow the Court to infer that Agent McClenic's actions rose even to the level

of negligence.  The evidence actually tends to show that McClenic arrested or

detained Harris only after extensive investigation of the activities at Harris'

property, and the manner of the arrest was necessitated by Harris' attempts to flee

rather than obey the orders of the officers at the scene.  The Court therefore finds

no evidence of McClenic's violation of Harris' procedural due process rights under

the Fourth and Fourteenth Amendments.

As to the reference to substantive due process, that claim must be analyzed pursuant to the standards applicable to Fourth Amendment claims.  Where a particular Amendment "provides an explicit textual source of constitutional protection against a particular kind of government action, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The Fourth Amendment, rather than the Fourteenth, governs the use of force by police in apprehending a suspect.  *See Lytle v. Bexar Cty.*., 560 F.3d 404, 410 (5th Cir. 2009); *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).

To succeed on his excessive force claim, Harris must show "he was seized and that he suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Ballard v. Barton*, 444 F.3d 391, 402 (5th Cir. 2006).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision hindsight." *Id*. (quoting *Graham*, 490 U.S. at 396). *See also, Wagner v. Bay City*, 227 F.3d 316, 321 (5th Cir. 2000) ("[E]ven law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity.") (internal citation and quotation marks omitted).  Additionally, the "reasonableness" test regarding this type of claim requires:

careful attention to the facts and circumstances of each particular case,
including the severity of the crime at issue, whether the subject poses
an immediate threat to the safety of the officers or others, and whether
he is actively resisting arrest or attempting to evade arrest by flight.

*Hunter v. Town of Edwards*, 871 F. Supp. 2d 558, 564 (S.D. Miss. 2012) (quoting

*Graham*, 490 U.S. at 396)).

The evidence provided here shows that Harris was attempting to flee the

scene, was noncompliant with officers' orders, and was struck once with a baton in

an area that was not his elbow or any other area that was likely to result in injury.

In the Court's view, this evidence shows that the actions of McClenic were

objectively reasonable, and he is entitled to qualified immunity regarding Harris'

excessive force claim.

### 2.   42 U.S.C. §§ 1985(3) and 1986 Claims

Harris next raises claims of conspiracy under 42 U.S.C. §§ 1985(3) and 1986.

Section 1985 does not create a federal cause of action for conspiracy generally.  It

applies only to conspiracies to intimidate public officials or obstruct justice, or to

deny rights on the basis of race or other protected status.  *See, e.g., Bryant v.*

*Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010).  Harris invokes § 1985(3),

which forbids conspiracies to deny rights on the basis of race or other protected

status.  Section 1986 addresses failure to prevent a conspiracy, and requires the

existence of a § 1985 conspiracy as an element of the § 1986 claim.  *Bryan v. City of*

*Madison*, 213 F.3d 267, 276 (5th Cir. 2000).  Harris does not allege that his arrest

was the result of class-based bias.  Thus, his claims under Sections 1985(3) and

1986 fail as a matter of law.

### 3.    State Law Claims

Harris asserts a number of state law claims in addition to his federal causes of action, which he lists as "false arrest, false imprisonment, slander and libel, assault, battery, criminal conversion, common law civil conspiracy, humiliation[1] and negligent infliction of mental and emotional distress."  (Compl. 7 (¶17), ECF No. 1-2).  The Defendants contend that most of these torts are time-barred pursuant to the one-year statute of limitations in Miss. Code Ann. § 15-1-35.  The provision requires that:

> All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year after the cause of such action accrued, and not after.

Miss. Code Ann. § 15-1-35.

In addition to the torts listed in the statute, the Mississippi Supreme Court has applied the one-year limitation period to claims of intentional infliction of emotional distress and civil conspiracy.  *Jones v. Fluor Daniel Servs. Corp.*, 32 So.3d 417, 422-23 (Miss. 2010); *Gasparrini v. Bredemeier*, 802 So. 2d 1062, 1065-66 (Miss. Ct. App. 2001).  Harris filed his Complaint on July 24, 2014, and the incident he complains of occurred more than one year earlier - on July 10, 2013.  Therefore,

---

[1]  The Court liberally construes Harris' use of the term "humiliation" along with the other allegations of the Complaint as a claim of intentional infliction of emotional distress.

Plaintiff's claims of false arrest, false imprisonment, slander and libel, assault, battery, common law conspiracy, and intentional infliction of emotional distress are barred by Miss. Code Ann. § 15-1-35.

The remaining two torts - conversion and negligent infliction of emotional distress - are governed by the three year statute of limitations in Miss. Code Ann. § 15-1-49.  *See Est. of Martin Luther King Jr., Inc. v. Ballou*, 856 F. Supp. 2d 860, 863 (S.D. Miss. 2012); *Breeden v. Buchanan*, 164 So. 3d 1057, 1061-62 (Miss. Ct. App. 2015).  The defendants request judgment as a matter of law as to these claims on the basis of the immunity provided by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-7(2).

The MTCA provides that "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties," with some exceptions for criminal behavior considered outside the course and scope of employment.  Miss. Code Ann. § 11-46-7(2).  A police officer is an "employee" of the municipality, and thereby immune from personal liability for acts or omissions occurring within the course and scope of the police officer's duties.  A police officer may only be held liable in his individual capacity when the officer's conduct constituted "fraud, malice, libel, slander, defamation or any criminal offense."  *Id*.

Defendants argue that there is no allegation in the Complaint of criminal behavior by either Byrd or McClenic, nor are there any allegations that they acted outside the course and scope of their employment at any time.  Although Harris includes the words "criminal conversion" in his Complaint, there are no facts

alleged showing that a conversion took place, much less that either Byrd or McClenic converted any of Harris' property, whether the conversion should be considered to be a tort or a crime.[2]  The evidence provided by the Defendants shows that a wallet, keys, cell phone and $246.00 in cash were received from and released to Harris.  (Def. Suppl. Mot. Ex. F, ECF No. 18-1).  The Court further notes that the negligent infliction of emotional distress claim is one of negligence, and therefore it does not fall within the definition of conduct that would expose an officer to personal liability pursuant to § 11-46-7(2).  For these reasons, neither Byrd nor McClenic can be held individually liable for negligent infliction of emotional distress or conversion.  These claims against them will be dismissed.

### 4.    Punitive Damages

Defendants argue that Harris may not obtain punitive damages from any of the Defendants named in this lawsuit for any of the state law claims, because such damages are barred by Miss. Code Ann. § 11-46-15.  *See Madison v. DeSoto Cty.*, 822 So. 2d 306, 310 (Miss. Ct. App. 2002 ) ("[N]o governmental body, or employee thereof, may be liable for punitive damages in any action in the courts of the State of Mississippi.").  Because it is apparent Harris cannot obtain punitive damages based on any remaining claim in this lawsuit, the Court will dismiss Harris' punitive damages claim in its entirety.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [14] Motion

---

[2]  As Defendants note, Mississippi statutes do not include a crime called "conversion."

for Summary Judgment filed by Defendants Mike Byrd and Ken McClenic is

**GRANTED**.  All claims against Byrd and McClenic in their individual capacities,

and the punitive damages claim, are **DISMISSED**.

  **SO ORDERED AND ADJUDGED** this the 9th day of October, 2015.

       s/ *Louis Guirola, Jr.*
       LOUIS GUIROLA, JR.
       CHIEF U.S. DISTRICT JUDGE